405 P.2d 233

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 611, AFL–CIO, Plaintiff-Appellee,**

v.

**TOWN OF FARMINGTON, a Municipal Corporation, Oscar Thomas, Mayor, Calvin L. Davis, Utility Manager, John P. Sheafe, Erick Johnson, and Francis Reilly, Members of the Utility Commission, Defendants-Appellants.**

**No. 7694.**

Supreme Court of New Mexico.

Aug. 23, 1965.

LaVor W. Burnham, Farmington, for appellants.

Tansey, Wood, Rosebrough & Roberts, Farmington, for appellee.

NOBLE, Justice.

The International Brotherhood of Electrical Workers brought an action in declaratory judgment to determine the right of the town of Farmington to enter into a written contract with the plaintiff union respecting its employees engaged in the operation of an electric utility owned by the town, and the town has appealed from a judgment declaring that it had legal authority to enter into a prior legal agreement with such union respecting hours, wages and working conditions of its members.

The facts are not in dispute, and the issues are ones of law. The town of Farmington acquired the electric utility from Basin Light & Power Company in 1959, and has operated the plant since its acquisition. Its electrical employees were formerly employees of the private utility working under a so-called collective bargaining agreement, which was continued by the town until 1962 when a new collective bargaining agreement was entered into between the town and the union. The union gave timely notice of its desire to make certain changes, and negotiations were in progress when this action was filed by the union to test the town's right to so contract.

The town argues that there can be no collective bargaining between it and the union because (1) the employees are public employees whose employment may not be made the subject of collective bargaining, and (2) such a collective bargaining agreement is contrary to the legislative policy as declared by Ch. 216, Laws 1961 (§§ 14–19–12 and 13, N.M.S.A.1953).

We recognize that, absent legislative authority, the courts of other jurisdictions have generally viewed as invalid any agreement between government management and public employees consummated through a process of collective bargaining. See the Annotation, 31 A.L.R.2d 1142, § 9, "Collective Bargaining," p. 1155, where it is said:

"Up to the present time, public employees are generally not entitled to collective bargaining in the sense that private industrial employees are."

There follow, pp. 1155, 1159, cases which deny or qualify the right to public employees to collective bargaining with their employers in relation to wages, hours, and working conditions.

The courts principally advance as reasons for denying the right of public employees to engage in union activities and particularly in collective bargaining, the sovereignty of the public employer; the fact that the government is established and operated for all the people and not for the benefit of any person or group; that it is not operated for profit; that public em-

ployees owe undivided allegiance to the public employer; and, that continued and uninterrupted operation of public employment is indispensable in the public interest. The great majority of the decided cases deal with employees working in a governmental position. The authorities are divided on the question of whether employees of a municipality in connection with its corporate or proprietary capacity may have collective bargaining.

The Missouri court in City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W.2d 539, flatly said that there could be no difference with regard to employees of the city in connection with its governmental or its proprietary capacity. That court ruled in the Springfield case that public employees · may organize for the purpose of discussing grievances, etc., but they may not demand the right to bargain collectively. We note, however, that Missouri had a state law with respect to the personnel system in municipalities with which collective bargaining would directly conflict, and in State ex rel. Moore v. Julian, 359 Mo. 539, 222 S.W.2d 720, it was said that the legislature by its King-Thompson Act changed the Springfield rule by expressly recognizing the right of municipal employees to bargain collectively, applying well-established principles of labor law to public employees in the limited field of public utilities. The Missouri court in Julian said that the activity of a bus system by the municipality corresponded in all essentials to the business formerly carried on under private ownership before the facility was acquired by the city, and that the legislature was cognizant of these matters when it included disputes in municipally owned utilities in its labor law. The rule in Missouri, · taken from its two decisions on the question, therefore, is that employees of a publicly owned utility may not demand collective bargaining, absent authority to do so conferred upon the municipality by law.

In Local 266, etc. v. Salt River Project Agr. Imp. & P. Dist., 78 Ariz. 30, 275 P. 2d 393, the project, engaged in the manufacture and development of electric power, was said to be a political · subdivision of the state, with all of the rights, privileges and immunities granted to municipal corporations. As such a quasi-municipal corporation, the district asserted that as a consequence, it was powerless to enter· into collective bargaining negotiations with 'its employees. The court said that Arizona had no legislative expression of public policy to control the terms of employment, as was the case in Mugford v. Mayor and City Council of Baltimore, 185 Md. 266, 44 A.2d 745, 162 A.L.R. 1101. Many of the decisions of other states were discussed in the Arizona case, including the Missouri Springfield decision which was said to turn on a statute which provided a single complete all-inclusive scheme for the selection, tenure, transfer, promotion and removal of all city employees.

We agree that any agreement which conflicts with the regulatory power of the municipality under a civil service or merit system would constitute bargaining away of legislative discretion, and be prohibited. Arizona, however, found that its statutory provisions defining and authorizing such districts did not intend to deny the district the power to enter into such agreements with its employees. That court said that while the district was not specifically given the power to make employment contracts, the authorization to do business in itself implies the necessity of hiring labor. Christie v. Port of Olympia, 27 Wash.2d 534, 179 P.2d 294.

Nutter v. City of Santa Monica, 74 Cal. App.2d 292, 168 P.2d 741, relied upon by Farmington, denied the right to require recognition of the union as a collective bargaining agent for city bus operators upon the specific ground that collective bargaining would be inconsistent with law because the city had adopted a personnel system under legislative authority.

■ It is certainly true that any statutory regulation of employment negates the view that there could be contractual negotiations between the governmental employer and the employee. If a merit system provides for those matters usually contained in a collective bargaining agreement, both could not exist concurrently, and the inconsistency must be resolved in favor of the statute or municipal ordinance, and the authority to enter into a legally binding collective bargaining agreement should properly be denied. Buggeln v. Cameron, 11 Ariz. 200, 90 P. 324; Local 266 etc. v. Salt River Project Agr. Imp. & P. Dist., supra.

It is conceded by the parties that the town, in operating the electric utility, is engaged in its corporate or proprietary capacity. We then turn to our statutes to determine whether any are inconsistent with the right to contract through collective bargaining.

By § 1, Ch. 213, Laws 1947, the legislature authorized and empowered municipalities with a population of more than 30,000 to establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of its employees. Chapter 216, Laws 1961, amended the 1947 statute so as to remove the population limitation and authorize all municipalities to adopt such merit system. It will be noted that this statute, unlike those of many other states, including Missouri and Maryland, does not itself provide a merit system for municipalities but only authorized municipalities to do so by ordinance.

Section 2, Ch. 213, Laws 1947, as amended by § 2, Ch. 216, Laws 1961 (§ 14–19–13, N.M.S.A.1953), so far as pertinent, reads:

"* * * The provisions of an ordinance and all rules and regulations issued pursuant thereto shall become a part of the contract of employment be-

tween the city and all employees thereof in positions covered by the merit system when the employment relationship exists at the time of the passage of such an ordinance, unless the employee shall file with the clerk within ten days of the passing of the ordinance a declaration stating that the employee does not desire to have the provisions of the ordinance, together with rules and regulations issued pursuant thereto, included as a part of his contract of employment."

■ It is apparent that the legislature recognized that employment contracts would have been entered into between municipalities and its employees. While collective bargaining contracts are not specifically mentioned in the statute, such agreements would certainly be within the language.

On April 23, 1963, the town of Farmington enacted an ordinance providing for a merit system applicable to the hiring, promotion, discharge and general regulation of all its employees. The ordinance, however, is not self-executing, but provides for the selection of a personnel board to administer the merit system and requires the board to adopt rules and regulations governing the procedure to be followed by it in carrying out the purposes of the ordinance. No finding was made by the trial court nor was one requested, either that the personnel board provided by the ordinance has been selected or has functioned, or that such board if selected has ever adopted any rules or regulations respecting the establishment or carrying into effect of a merit system. It is, therefore, apparent that New Mexico has no statute providing a civil service or merit system covering those matters normally the subject of collective bargaining agreements as was said to prevent collective bargaining in the Springfield case and in Mugford v. Mayor, et als., supra, nor, so far as the evidence in this case discloses, does Farmington have an effective ordinance providing for a personnel system, as in Nutter v. City of Santa Monica, supra, at least until rules and regulations have been adopted by its personnel board.

■ The question presented to us by this appeal is a narrow one. Did the town of Farmington have authority to enter into the collective bargaining agreement dated July 22, 1962, with the electrical union respecting its employees engaged in the operation of its electrical utility? From what has been said, we think it did have that authority.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

CHAVEZ and MOISE, JJ., concur.